# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| EDUARD ARAMOVICH VARDANYAN,<br><br>          Petitioner,<br><br>    v.<br><br>KRISTI NOEM, et al.,<br><br>          Respondents. | Case No. 5:26-cv-00423-MRA (RAO)<br><br>**ORDER GRANTING PETITIONER'S APPLICATION FOR A TEMPORARY RESTRAINING ORDER AND ORDERING IMMEDIATE RELEASE FROM CUSTODY [2]** |

Before the Court is Petitioner's Ex Parte Application for a Temporary Restraining Order ("TRO") pending adjudication of his Petition for Writ of Habeas Corpus (the "TRO Application"). ECF 2. Petitioner requests that the Court order his immediate release from custody and bar his removal to a third country. *Id.* at 3. The Court read and considered the moving papers and Respondents' Notice of Non-Opposition and deemed the matter appropriate for decision without oral argument. *See* Fed. R. Civ. P. 78(b); L.R. 7-15. For the reasons stated herein, the Court **GRANTS** the TRO Application.

## I. BACKGROUND

Petitioner Eduard Aramovich Vardanyan ("Petitioner"), proceeding *pro se*, filed a habeas petition on January 30, 2026. ECF 1. The petition alleges as follows:

On or about December 19, 1987, Petitioner entered the United States as a stateless refugee from the former Soviet Union ("USSR"). *Id.* at 3. Petitioner was seven years old at the time and was accompanied by his parents, who were also stateless refugees. *Id.* On or about February 1996, Petitioner was transferred from local custody to immigration custody. *Id.* On May 14, 1996, an Immigration Judge ordered Petitioner's deportation. *Id.* Petitioner fully complied with the government's efforts to remove him. *Id.* The government contacted both the Russian and Abkhazia consulates but did not receive travel documents that would allow Petitioner to be removed. *Id.* As a result, after 90 days in custody, the government released Petitioner on an Order of Supervision. *Id.*

Petitioner complied with the terms of his supervised release for 29 years. *Id.* Petitioner was incarcerated at Calipatria State Prison from approximately 2012–2013 but has not committed any crimes since his release. *Id.* at 3–4. Petitioner has never committed any violent crime. *Id.* at 4. Approximately 15 years ago, at the direction of Immigration and Customs Enforcement ("ICE"), Petitioner appeared before the Russian consulate in San Francisco, but the Russian consulate informed Petitioner that he was not a Russian citizen. *Id.* at 3. During his supervised release, Petitioner has continued living and working

in the United States. *Id.* at 4. Petitioner is a father to a U.S. citizen and has worked as a caretaker for the elderly and disabled for the past 15 years. *Id.*

On December 19, 2025, Petitioner was detained by ICE at a routine check-in. *Id.* Petitioner informed ICE officials that he was scheduled to receive a magnetic resonance imaging ("MRI") and cancer screening at the University of California, Los Angeles that day. *Id.* ICE nonetheless detained Petitioner. *Id.* Petitioner was not given notice of ICE's intention to detain him or provided any information about why his parole or supervision was revoked. *Id.* Petitioner is currently being held at the Adelanto Detention Facility in Adelanto, California. *Id.* While in custody at Adelanto, Petitioner has sent more than 11 sick call requests and has become unresponsive once, requiring removal from his dormitory in a wheelchair. *Id.* Petitioner is suffering from depression, anxiety, lack of sleep, and lack of appetite due to his detention. *Id.*

In the instant TRO Application, which was filed the same day as the habeas petition, Petitioner requests that the Court enjoin Respondents Warden-Facility Administrator of the Adelanto ICE Processing Center; Thomas P. Giles, Director of the Los Angeles ICE Field Office; Todd Lyons, Acting Director of ICE; Kristi Noem, Secretary of the Department of Homeland Security; and Pamela Bondi, United States Attorney General (collectively, "Respondents" or the "government") from continuing to detain him. ECF 2. On February 3, 2026, the government filed a Notice of Non-Opposition to the TRO Application. ECF 8. The Non-Opposition stated in its entirety: "On January 30, 2026, Petitioner filed an *ex parte* application for a temporary restraining order (the "Application") seeking an order requiring Respondents to release him from immigration detention. At this time, Respondents do not have an opposition argument that they are able to present." *Id.* at 2 (internal citations omitted).

II. **DISCUSSION**

The same standard applies to issuing a TRO or a preliminary injunction under Federal Rule of Civil Procedure 65. *Six v. Newsom*, 462 F. Supp. 3d 1060, 1067 (C.D. Cal. 2020) (citation omitted); *see also Stuhlbarg Int'l Sales Co. v. John D. Brush & Co.*, 240

F.3d 832, 839 n.7 (9th Cir. 2001) (noting that a TRO and preliminary injunction involve "substantially identical" analysis). Like a preliminary injunction, a TRO is "an extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief." *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 22 (2008). Under *Winter*, a plaintiff seeking a TRO must establish four elements: "(1) a likelihood of success on the merits, (2) that the plaintiff will likely suffer irreparable harm in the absence of preliminary relief, (3) that the balance of equities tip in its favor, and (4) that the public interest favors an injunction." *Wells Fargo & Co. v. ABD Ins. & Fin. Servs., Inc.*, 758 F.3d 1069, 1071 (9th Cir. 2014) (citing *Winter*, 555 U.S. at 20).

The authority of ICE to detain noncitizens subject to final orders of removal derives from 8 U.S.C. § 1231, which directs the Attorney General to cause the removal of any noncitizen from this country within 90 days of any order of removal. 8 U.S.C. § 1231(a)(1). Once that time passes, however, and it is determined that "removal is no longer reasonably foreseeable, continued detention is no longer authorized by statute." *Zadvydas v. Davis*, 533 U.S. 678, 699 (2001). The noncitizen must be released on appropriate terms of supervision, 8 U.S.C. § 1231(a)(3), which appears to be what happened in this case at some point after Petitioner was ordered removed.[1] The revocation of that release is governed by 8 C.F.R. § 241.13(i), which authorizes ICE to revoke a noncitizen's release if the noncitizen violates any conditions of release and for purposes of removal. Specifically, a noncitizen's supervision may be revoked "if, on account of changed circumstances," it is determined that "there is a significant likelihood that the [noncitizen] may be removed in the reasonably foreseeable future." 8 C.F.R. § 241.13(i)(2).

Given the government's non-opposition to the TRO Application, the Court finds that Petitioner is clearly entitled to immediate release from custody. The government has detained Petitioner without due process of law, without demonstrating that there is any significant likelihood of his removal in the reasonably foreseeable future, and without

---

[1] It is not clear from the habeas petition or TRO Application when and how Petitioner was placed on supervision.

demonstrating that Petitioner violated any term of his supervision. *See Zadvydas*, 533 U.S. at 693 (explaining that noncitizens within the United States are entitled to due process "whether their presence here is lawful, unlawful, temporary, or permanent"). Moreover, Petitioner was detained without notice and an opportunity to be heard on the revocation of his supervision in violation of the requirements of 8 C.F.R. § 241.13(i). It is black letter law that government agencies are required to follow their own regulations. *United States ex rel Accardi v. Shaughnessy*, 347 U.S. 260, 268 (1954). This is especially true when the regulation provides for procedural due process. *See Niz-Chavez v. Garland*, 593 U.S. 155, 172 (2021) ("If men must turn square corners when they deal with the government, it cannot be too much to expect the government to turn square corners when it deals with them.").

The government presents no defense or explanation for its actions despite freedom from detention being "the most elemental of liberty interests." *Hamdi v. Rumsfeld*, 542 U.S. 507, 529 (2004). Moreover, the government does not dispute that "[d]eprivation of physical liberty by detention constitutes irreparable harm." *Arevalo v. Hennessy*, 882 F.3d 763, 767 (9th Cir. 2018) (citing *Hernandez v. Sessions*, 872 F.3d 976, 994 (9th Cir. 2017). As for the final *Winter* factors, the balance of equities and the public interest overwhelmingly weigh in favor of granting the TRO because it obviously would be neither equitable nor in the public interest to allow the government to continue to violate federal law.

Despite effectively conceding that Petitioner has been unlawfully detained, Respondents make no effort to release him. Given its prerogative, the government would continue to deprive Petitioner of his most fundamental liberty interest, keeping him unlawfully detained until this Court orders his release. This approach not only squanders finite judicial resources, but more importantly, it offends the Constitution. *See Zadvydas*, 533 U.S. at 679 ("Freedom from imprisonment lies at the heart of the liberty protected by the Due Process Clause."). Thus, this Court enforces the Constitution as it must even when

the government chooses to ignore it.[2]

### III. CONCLUSION

For the foregoing reasons, the TRO Application is **GRANTED**. The Court hereby **ORDERS** Respondents to:

1. **Immediately release** Petitioner from custody;
2. **Reinstate** Petitioner's prior order of supervision;
3. **Refrain from re-detaining** Petitioner without notice and opportunity to be heard consistent with the Due Process Clause and immigration law and regulations;
4. **File reliable proof** with this Court that Petitioner has been released by no later than **February 5, 2026**, at **4:00 p.m.** – failure to do so may result in sanctions;
5. **Show cause** by **February 6, 2025**, why Petitioner's habeas petition and/or his Motion for Preliminary Injunction should not be immediately granted given the government's non-opposition to this TRO. The Court may order a reply from Petitioner and rule without oral argument.

This TRO shall take immediate effect on **February 4, 2026**, at 5:00 p.m. and remain in effect for **14 days** from the date of this Order. The TRO may be extended for good cause.

**IT IS SO ORDERED.**

Dated: February 4, 2026

HON. MONICA RAMIREZ ALMADANI
UNITED STATES DISTRICT JUDGE

---

[2] Any efforts to remove Petitioner to a third country must also comport with due process. ICE is required as a matter of law and protocol to afford Petitioner a meaningful opportunity to contest his removal to a third country on the basis of fear of persecution or torture. ECF 14 at 12; *see also* 8 U.S.C. § 1231(b)(3)(A); 28 C.F.R. § 200.1; 8 C.F.R. § 208.16-18, 1208.16-18. "In other words, third-country removals are subject to the same mandatory protections that exist in removal or withholding-only proceedings." *D.V.D. v. U.S. Dep't of Homeland Sec.*, No. CV 25-10676-BEM, 2025 WL 1142968, at *3 (D. Mass. Apr. 18, 2025).